UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TARA L. GAGNON<br><br>      Plaintiff,<br>v.<br><br>MERCEDES BENZ OF SHREWSBURY; WAGNER & WAGNER AUTO SALES, INC.; WAGNER AUTOMOTIVE ENTERPRISES, LLC; and MARK W. WAGNER,<br><br>      Defendants. | **COMPLAINT &**<br>**REQUEST FOR JURY TRIAL** |

## I.     SUMMARY

1.     This case arises out of a car dealer scam colloquially referred to as a "Yo-Yo" sale.  A Yo-Yo sale occurs when a dealer sells a car to a consumer but then later demands that the consumer return to the dealership because the financing purportedly fell through.  At the time of sale, the dealer knows that it intends to treat the contract as conditional upon third-party assignment or financing, but it withholds this information from the consumer.  Typically, a consumer who returns to the dealer is then presented with less-favorable credit terms.  The consumer is pressured into accepting these terms in order to keep the vehicle they thought they had already purchased.  If a consumer does not accept these terms, then in some extreme cases dealers have attempted to repossess the vehicle or have threatened criminal actions.  In this case, Defendants have gone even further.  **Defendants have falsely reported the vehicle they sold to Ms. Tara Gagnon as stolen, and are actively seeking to pursue criminal charges against her**.  In light of these outrageous actions, Ms. Tara Gagnon now brings this action for violation

1

of the Truth in Lending Act, violation of the Equal Credit Opportunity Act, violation of the Fair Credit Reporting Act, breach of contract, and fraud or deceit in the sale of personal property.

## II.    PARTIES

2.    Plaintiff, Tara L. Gagnon ("Ms. Gagnon" or "Plaintiff") is a natural person residing in Leominster, Massachusetts.

3.    Defendant, Mercedes Benz of Shrewsbury is a business entity operating a car dealership at 760 Boston Turnpike, Shrewsbury, Massachusetts 01545.  It is currently unknown what type of business entity operates this car dealership, or who owns it.  As further described herein, Plaintiff purchased a vehicle and obtained financing from an entity identified as "Mercedes Benz of Shrewsbury," but she has been unable to locate the existence of any entity registered to do business under this name in Massachusetts or in Shrewsbury, Massachusetts.  Upon information and belief, Mercedes Benz of Shrewsbury is owned and operated by co-defendants Wagner & Wagner Auto Sales, Inc.; Wagner Automotive Enterprises, LLC; and/or Mark W. Wagner.

4.    The website for Mercedes Benz of Shrewsbury is wagnermercedesofshrewsbury.com (the "Website").  Among other things, the Website identifies Mark Wagner and Ronald Wagner as the owners of Mercedes Benz of Shrewsbury and as the owners of Wagner Motors.  Plaintiff has also been unable to locate the existence of any entity currently registered to do business as "Wagner Motors" in Massachusetts.[1]

---

[1] Mark W. Wagner filed a certificate of cancellation for Wagner Motors, LLC in 2014, which indicated that the business was dissolved and winding up. Prior to this cancellation, it had described its business as the buying, selling, and leasing of automobiles, among other things. It also stated that it had an office at 67 Main Street, Boylston, Massachusetts 01505. It also stated that it no managers. Mark W. Wagner was authorized to execute documents to be filed with the Commonwealth of Massachusetts, was authorized to execute documents purporting to affect an interest in real property, and was the registered agent.

5. Defendant, <u>Wagner & Wagner Auto Sales, Inc</u>. is a domestic corporation with a principal office located at 67 Main Street, Boylston, Massachusetts 01505. It has described itself as an auto dealer. Mark W. Wagner is the president, secretary, a director, and the registered agent.

6. Defendant, <u>Wagner Automotive Enterprises, LLC</u> is a domestic limited liability company with an office at 67 Main Street, Boylston, Massachusetts 01505. It has described its business as the buying, selling, and servicing of automobiles, among other things. It has stated to the Commonwealth of Massachusetts that it does not have any managers. Mark W. Wagner is authorized to execute documents to be filed with the Commonwealth of Massachusetts, is authorized to execute documents purporting to affect an interest in real property, and is the registered agent.

7. Defendant, <u>Mark W. Wagner</u> is a natural person residing in Massachusetts.

8. Upon information and belief, defendants Mercedes Benz of Shrewsbury; Wagner & Wagner Auto Sales, Inc.; Wagner Automotive Enterprises, LLC; and Mark W. Wagner (hereinafter collectively referred to as "Defendants") jointly own and/or operate the car dealership identified as Mercedes Benz of Shrewsbury located at 760 Boston Turnpike, Shrewsbury, Massachusetts 01545 (hereinafter, the "Dealership").

### III.    JURISDICTION & VENUE

9. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and/or 1337 because this case arises under the laws of the United States pursuant to the Truth in Lending Act (15 U.S.C. §§ 1601, et seq.), the Equal Credit Opportunity Act (15 U.S.C. §§ 1691, et seq.), and the Fair Credit Reporting Act (15 U.S.C. §§ 1681, et seq.), as further described herein.

10. The Court also has supplemental jurisdiction to hear and adjudicate Plaintiff's claims arising under state law. 28 U.S.C. § 1367.

11. Venue is proper in this Court because a substantial portion of the acts giving rise to this action occurred within the Commonwealth of Massachusetts. 28 U.S.C. § 1391(b).

### IV. COMMON FACTS

12. In June 2025, Ms. Gagnon wanted to purchase a 2021 Mercedes Benz GLA 250 (the "Vehicle") that Defendants had advertised for sale on the Website.

13. On June 23, 2025, Ms. Gagnon submitted an application for financing to purchase the Vehicle through the Website.

14. Ms. Gagnon then received a text message from Defendants stating:

> Hi Tara. Great news! My finance manager got you approved on this GLA250. When are you able to stop in and check out the vehicle?

15. Ms. Gagnon replied, stating:

> What would be the down payment and the monthly payments around so I can share with my fiancé? I've already drove this vehicle 1 million times I know we like it and I was told that you guys have really good cars and never have mechanic issues so I'm trusting in you

16. In response, Ms. Gagnon was requested to call the Finance Manager, Mike. She was told that he would get ready for her visit, and she then rushed to the Dealership. She texted, stating, "On my way in traffic."

17. On June 23, 2025, Ms. Gagnon and Defendants entered into a Motor Vehicle Purchase Contract ("MVPC") pursuant to which Ms. Gagnon purchased the Vehicle for the sum of $35,663.94. (**Exhibit 1**).

18. The MVPC does not contain any condition precedent.

19. The MVPC does not contain any condition subsequent.

20. The MVPC is an integrated contract and expressly states that it comprises "the entire agreement between the dealer and purchaser and no other agreement or understanding has been made or entered into."

21. The MVPC was fully executed by Ms. Gagnon, Mr. Damiani, and Mercedes Benz of Shrewsbury.

22. Ms. Gagnon paid a deposit of $1,000.00 on a card, and financed the remaining balance of $34,663.94.

23. Specifically, Ms. Gagnon entered into a Retail Installment Sales Contract (the "RISC") pursuant to which Ms. Gagnon agreed to pay Defendants the sum of $34,663.94, at an annual percentage rate of 14.20%, over 75 monthly payments of $703.93, for a total of $52,794.75. (**Exhibit 2**).

24. Ms. Gagnon's fiancé, Nathaniel Damiani ("Mr. Damiani"), also entered into the RISC as a co-borrower.

25. The RISC specifically identifies Ms. Gagnon as the "Buyer."

26. The RISC specifically identifies Mr. Damiani as the "Co-Buyer."

27. The RISC specifically identifies "Mercedes Benz of Shrewsbury" as the "Seller-Creditor."

28. The RISC states that Ms. Gagnon and Mr. Damiani "agree to pay the Seller – Creditor (sometimes "we or "us" in this contract) the Amount Financed and the Finance Charge in U.S. funds according to the payment schedule below."

29. The RISC does not contain any condition precedent.

30. The RISC does not contain any condition subsequent.

31. The RISC is an integrated contract and expressly states that it contains the "entire agreement between you and us relating to this contract."

32. The RISC was fully executed by Ms. Gagnon, Mr. Damiani, and Mercedes Benz of Shrewsbury.

33. Ms. Gagnon left the Dealership without the Vehicle that day. Instead, she expected to take possession two days later. Ms. Gagnon had switched insurance providers, though, which caused a slight delay. Accordingly, it was ultimately agreed that Ms. Gagnon would take possession of the Vehicle on June 26, 2025.

34. Ms. Gagnon did in fact take possession of the Vehicle on June 26, 2025.

35. Defendants knowingly, willfully, and intentionally transferred possession of the Vehicle to Ms. Gagnon on June 26, 2025.

36. Upon information and belief, Defendants did not intend to service the loan provided to Ms. Gagnon but rather Defendants intended to assign the RISC to a third party in exchange for a lump sum payment.

37. Upon information and belief, Defendants intended to assign the RISC to Global Lending Services ("GLS").

38. Upon information and belief, Defendants executed a certificate of title for the Vehicle and assigned its security interest to GLS.

39. Upon information and belief, GLS did not agree to accept assignment of the RISC.

40. Ms. Gagnon has not received any explanation of GLS's decision.

41. Ms. Gagnon's credit report reflects that an inquiry was made by "Nowcom/Westlake Financ" on July 17, 2025. Upon information and belief, this inquiry was caused by Defendants without Ms. Gagnon's authorization.

42. Defendants subsequently requested that Ms. Gagnon and/or Mr. Damiani provide further financial information, which was provided.

43. In July 2025, Defendants requested that Ms. Gagnon come back to the dealership to sign additional documents, which Ms. Gagnon agreed to do.

44. Ms. Gagnon returned to the dealership and met with Defendants.

45. At the meeting, Ms. Gagnon was provided with an electronic signature pad. She admits that she signed the pad multiple times, and that her signature was presumably affixed to multiple documents in this fashion. However, Ms. Gagnon does not recall exactly what these documents were, or their exact terms. Ms. Gagnon was not provided with a copy of these documents. Upon information and belief, though, the documents related to Westlake Financial.

46. On July 26, 2025, Ms. Gagnon received an email from Westlake stating, "Congratulations on your recent automobile purchase!"

47. Upon information and belief, Defendants again did not assign the RISC to its intended assignee, Westlake.

48. To date, Ms. Gagnon is not aware why the RISC was not assigned to Westlake. She has not received any notice of adverse action concerning any credit application with Westlake.

49. On August 1, 2025, Ms. Gagnon sent an email to Defendants, stating:

> I've received several phone calls from Westlake financial stating that they are missing information and therefore cannot move forward with this loan , I filled out the references while I was there I've sent over both my bank statements to this email and some recent paycheck stubs from Nathaniel the cosigner as they told me they

7

needed that, but in the office, I was told they didn't need that. so I sent it over anyway I have been calling back for the past two weeks with no calls back one asked to speak to whoever the finance manager is because while I was there, I also told them about the issues with the vehicle that I was having there is a noise coming from the vehicle and I was told they would ask what was done to the car and if it had an oil change before I received it! No follow up on that either! I have not received any phone calls back, but from Westlake financial asking me for proof of all of this information that should have been done on your end . Thanks hopefully this is all situated by Monday and I also get a response back on when this vehicle can go in for servicing to see what the problem is.

50. On August 8, 2025, Defendants purported to email Ms. Gagnon decision stating that GLS had approved the sum of $17,832.65.  Documents purporting to be decisions from GLS and Westlake were attached to the email, but Ms. Gagnon was unable to open them.

51. Ms. Gagnon requested that the Defendants resend her the GLS and Westlake decisions, but she has never received them.

52. Ms. Gagnon also contacted Defendants regarding the condition of the Vehicle. She stated that repairs were needed on the Vehicle, which Defendants had promised to complete when she signed the second round of paperwork.

53. Ms. Gagnon knowingly, willfully, and intentionally transferred possession of the Vehicle to Defendants for the purpose of completing these repairs on or about August 16, 2025.

54. On August 18, 2025, Defendants texted Ms. Gagnon, stating the following:

Hey Tara, its Nick. I just wanted to let you know that my GM, Joe, was able to call in a favor with Westlake and get the stipulations approved with the paperwork they have. They also waived the remaining requirements. This means we are all set with paperwork.

55. Ms. Gagnon's credit report reflects that inquiries were made on August 19, 2025 by "Nowcom / Westlake Financ" and "Santander Consumer USA."  Upon information and belief, these inquiries were caused by Defendants without Ms. Gagnon's authorization.

8

56. Defendants remained continuously in possession of the Vehicle for approximately two weeks, until August 29, 2025.

57. Upon information and belief, during this time the Defendants performed repairs on the Vehicle.

58. Defendants knowingly, willfully, and intentionally transferred possession of the Vehicle back to Ms. Gagnon on or about August 29, 2025.

59. Defendants provided Ms. Gagnon with an invoice dated August 29, 2025, which indicates that no payment was due because all repairs were covered under warranty. (**Exhibit 3**).

60. Following the repairs, though, Defendants continued to request that Ms. Gagnon and/or Mr. Damiani provide further financial information, which was provided.

61. Ms. Gagnon's credit report reflects that an inquiry was made on September 9, 2025, by "700 Credit / Mercedes Be." Upon information and belief, this inquiry was caused by Defendants without Ms. Gagnon's authorization.

62. On September 16, 2025, Ms. Gagnon sent Defendants an email, stating:

> I hope you're doing well. I'm reaching out to follow up regarding the financing for my vehicle. I wanted to check in on the status, as there still seem to be some lingering details that I haven't received an update on. Could you please provide me with the current status of the financing As I thought this was allset per previous messages until I received a message from someone else asking for my bank statements. I did message you on the number you have messaged me from before, unfortunately with no response. Could you please get back to me by email at your earliest convenience to give me a better explanation to what is happening again the bank did call me and told me they need a copy of my license. I'm just really confused. Me and both Nathaniel have provided everything we needed to give in the beginning. We had a deal signed And were told it was all set back in June . this has been an extremely stressful matter. I'm literally stressed out over this every single day wondering why payments have not started. What the limbo is. I felt at ease when you sent me the message telling me that it was all set that your manager or GM sent in a favor and and you didn't need anything else .
>
> Thank you for your time and assistance—I appreciate your help in resolving this.

63.     Ms. Gagnon's credit report reflects that an inquiry was made on September 23, 2025, by "Nowcom / Westlake Financ." Upon information and belief, this inquiry was caused by Defendants without Ms. Gagnon's authorization.

64.     On October 8, 2025, Defendants called Ms. Gagnon and left a voicemail stating, among other things that, "it looks like they're actually going to return the contract." The voicemail further stated that Defendants were going to have the general sales manager at Kia try to work with his bank because they deal with customers like Ms. Gagnon more often. The voicemail further stated that they would need to her credit opened up to see. Defendants further stated that they would try to keep Ms. Gagnon in the original car.

65.     Ms. Gagnon's credit report reflects that inquiries were made on October 8, 2025 by "Santander Consumer USA," "Global Lending Service," "Ally Financial," and "700 Credit/Wagner Kia." Upon information and belief, these inquiries were caused by Defendants without Ms. Gagnon's authorization.

66.     Defendants subsequently told Ms. Gagnon that she would need to come back to the dealership again to sign a third round of documents. Defendants also requested that Ms. Gagnon pay an additional $1,500, which would be used as an additional down payment.

67.     On October 13, 2025, Ms. Gagnon sent an email to Defendants, stating:

> Hi Edwin thank you , im trying to get better still , im thinking Thursday or Friday Nathaniels double checking with his jobs what day he can sneak off , how much did u say you need again ? And can we pay with a check (if so who do we write it out too ?) or a card ? Also can u please send me the withdrawal letters from both global lending and Westlake to have to show Nathaniel he's giving me a hard time about them banks cause they called me to set up payments , and with you asking for money per our conversation for missed payments but applying to money down he's confused I'm trying to explain it to him before we go there and show him I don't owe neither bank anything. So please just let me know how much I need to bring in and form of payment and did u say u work Thursday and Friday ?
> Thanks talk soon

68. Defendants responded to this email confirming that "$1500 is the amount," and that it could be paid via cash, check, or credit card.

69. Ms. Gagnon and Mr. Damiani ultimately did not agree to make this payment to Defendants.

70. On October 17, 2025, Defendants emailed Ms. Gagnon requesting that she bring the Vehicle back to the dealership.

71. On October 20, 2025, Defendants emailed Ms. Gagnon requesting that she (1) sign new financing paperwork, (2) complete payment for the Vehicle, or (3) return the Vehicle. The email threatened that Defendants would be forced to take legal action if she did not respond promptly.

72. On October 22, 2025, Defendants emailed Ms. Gagnon, stating:

> This is our third attempt to contact you regarding the 2021 Mercedes-Benz GLA250. Unfortunately, your purchase was not approved by Meredes-Benz lenders due to an unsatisfied Proof of Income (POI) stipulation, and this matter must be resolved immediately.
>
> We have located an alternative financing option through our Kia dealership, and this lender has approved your POI.
>
> Please contact us as soon as possible to discuss the next steps, either to return the vehicle or to finalize financing through the alternative lender. If we do not hear from you within 48 hours, we may be forced to pursue legal remedies, which could include repossession and notification to the authorities.
>
> We strongly prefer to resolve this matter cooperatively and appreciate your prompt attention to this.

73. On October 22, 2025, Defendants caused a charge to Ms. Gagnon's bank account in the amount of $2.00.

74. Ms. Gagnon did not authorize this charge.

75. On October 23, 2025, Ms. Gagnon emailed the Defendants stating that she did not authorize the charge, and asking for an immediate explanation and reversal. To date Defendants have neither provided Ms. Gagnon an explanation for this charge, nor returned it.

76. On November 5, 2025, Ms. Gagnon was served with a letter from Defendants requesting that she return the Vehicle to "Wagner Mercedes" or that she provide payment in good funds by the next day, November 6, 2025 at 5pm. (**Exhibit 4**).

77. On November 6, 2025, Ms. Gagnon filed a Consumer Complaint against Defendants with the Massachusetts Attorney General's Office. She summarized her complaint as follows:

> On June 23, 2025, I purchased a 2021 Mercedes Benz GLA, The dealership registered and title the car in My name a month later I received a phone call from a guy name Mike stating that I needed to come in and meet because something happened with financing,I went to the dealership and was pressured into signing a new agreement that was not favorable, and I expressed my concerns that were ignored. they later claimed that the financing was not approved, though I have several supporting messages stating The financing was all set ,they don't need any more documents  Now the GM asking for them again constantly running my credit, they tried to transfer the vehicle to one of their other dealership Kia of Wagner Shrewsbury and demand more money when I didn't agree,calls and threatening emails also had an attorney deliver a letter threatening legal action if I didn't return the car, the vehicle was in  servicing for two weeks for engine light  I called the original lienholder on the Title to make sure I owe nothing I was told there were going to release me the title Maruice intercepted that title.10/22 Unauthorized charge on my account for $2 I'm extremely stressed And had to go to doctor.

(**Exhibit 5**).

78. On November 25, 2025, Ms. Gagnon and Mr. Damiani received a letter from Capital One stating that Wagner Kia of Shrewsbury had sent them a request for auto financing on October 8, 2025. The letter stated that the request for financing was approved, but upon terms that were different from what the dealer requested. Upon information and belief, this credit application was submitted by Defendants without Ms. Gagnon's authorization.

12

79. Defendants have falsely reported the Vehicle as stolen.

80. Upon information and belief, Ms. Gagnon has been investigated by the Shrewsbury Police Department.

81. Upon information and belief, Ms. Gagnon has been investigated by the Massachusetts State Police.

82. Defendants are actively seeking to pursue criminal charges against Ms. Gagnon for allegedly stealing the Vehicle and/or perjury.

83. Upon information and belief, Mr. Mark W. Wagner has personally requested that Ms. Gagnon be charged with the foregoing crimes.

84. Ms. Gagnon has at all times been ready, willing, and able to pay the monthly installments she agreed to pay in the RISC.  Defendants have simply refused to honor their contracts.

85. Ms. Gagnon has suffered damages due to Defendants' actions.

86. Ms. Gagnon's credit has been damaged.

87. Ms. Gagnon's reputation has been impugned.

88. Ms. Gagnon has lost time, credit, and other opportunities.

89. Defendants' actions have also caused Ms. Gagnon to suffer emotional distress and/or an invasion of personal privacy, including but not limited to mental anguish, stress, anxiety, fear, embarrassment, and humiliation.  On multiple occasions, Ms. Gagnon has sought and received medical attention for the emotional distress caused by Defendants.

90. Ms. Gagnon suffered an injury in fact that is traceable to the acts and/or omissions of Defendants, and which is likely to be redressed by a favorable decision in this matter.

## V.     CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE TRUTH IN LENDING ACT
### 15 U.S.C. §§ 1601, et seq.
### (AGAINST ALL DEFENDANTS)

91. The preceding actions are incorporated herein by reference.

92. Defendants each regularly extend or offer consumer credit that is payable in more than four installments, or for which the payment of a finance charge is or may be required.

93. Defendants are the person(s) to whom the debt arising from a consumer credit transaction is initially payable on the face of the indebtedness or agreement.

94. Defendants are each a "creditor" as that term is defined in the Truth in Lending Act (the "TILA"). 15 U.S.C. §. 1602(g).

95. The TILA disclosures provided by Defendants on the RISC indicate that estimated payments are identified with an (e).

96. No payments on the RISC are identified as estimated.

97. The TILA disclosures provided by Defendants do not disclose that the Defendants intended to treat the contract as if it were contingent upon a third-party assignment.

98. The TILA disclosures provided by Defendants do not disclose that the Defendants intended to treat the contract as if it were contingent upon a third-party financing approval.

99. The TILA disclosures provided by Defendants do not disclose any condition upon which Defendants intended to take back possession and ownership of the Vehicle.

100. The TILA disclosures provided by Defendants do not disclose any condition upon which Defendants intended to allege that Ms. Gagnon stole the Vehicle.

101. Defendants' foregoing omissions render the TILA disclosures provided to Ms. Gagnon illusory and not meaningful.

102. Defendants' actions violated the TILA.

103. Since taking possession of the Vehicle in June 2025, Ms. Gagnon has been paying to insure the Vehicle. If Ms. Gagnon was required to pay for insurance on the Vehicle until a condition was met, then her interim insurance payments also constitute finance charges that were not disclosed to Ms. Gagnon.

104. Ms. Gagnon has suffered damages from Defendants' actions, including monetary loss, credit damage, lost reputation, lost time, lost credit, lost opportunities, and emotional distress.

105. Pursuant to the TILA, Ms. Gagnon respectfully requests an award of actual damage, statutory damage, costs, and reasonable attorney's fees. 15 U.S.C. § 1640

## COUNT II
## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT
## 15 U.S.C. §§ 1691, et seq.
## (AGAINST ALL DEFENDANTS)

106. The preceding allegations are incorporated herein by reference.

107. Defendants regularly extend, renew, or continue consumer credit, or arrange for the extension, renewal, or continuation of consumer credit.

108. Each Defendant is a "creditor" as that term is defined in the Equal Credit Opportunity Act (the "ECOA"). 15 U.S.C. § 1691a(e).

109. Defendants regularly participate in credit decisions relating to consumers.

110. Defendants regularly generate profit from credit that is extended to consumers.

111. Defendants' actions constitute adverse action for purposes of the ECOA.

112. Ms. Gagnon is an "applicant" as that term is defined in the ECOA. 15 U.S.C. § 1691a(b).

113. Pursuant to the ECOA, a creditor must notify an applicant of its action on the application within thirty (30) days. 15 U.S.C. § 1691(d)(1).

114. In violation of the ECOA, Defendants failed to timely notify Ms. Gagnon of the adverse action taken on her application(s).

115. Pursuant to the ECOA, Ms. Gagnon was entitled to a statement of reasons for the adverse action(s) taken on her application(s). 15 U.S.C. § 1691(d)(2).

116. In violation of the ECOA, Defendants have failed to provide Ms. Gagnon with a statement of reasons for the adverse action(s) taken on her application(s).

117. Upon information and belief, a verbal statement or notification would fail to comply with the ECOA because Defendants acted on more than one hundred and fifty (150) applications within the calendar year preceding the adverse action. 15 U.S.C. 1691(d)(5).

118. Ms. Gagnon has suffered damages from Defendants' actions, including monetary loss, credit damage, lost reputation, lost time, lost credit, lost opportunities, and emotional distress.

119. Pursuant to the ECOA, Ms. Gagnon respectfully requests an award of actual damage, punitive damages of $10,000, costs, and reasonable attorney's fees. 15 U.S.C. § 1691e.

**COUNT III**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681, et seq.**
**(AGAINST ALL DEFENDANTS)**

120. The preceding allegations are incorporated herein by reference.

121. Defendants are each a "person" as that term is defined in the Fair Credit Reporting Act (the "FCRA"). 15 U.S.C. § 1681a.

122. A credit report constitutes a "consumer report" as that term is defined in the FCRA. 15 U.S.C. § 1681a.

123. Pursuant to the FCRA, any person who uses or obtains a consumer report must have a permissible purpose to do so. 15 U.S.C. § 1681b(f). The person must also certify their purpose. 15 U.S.C. § 1681b(f).

124. After June 23, 2025, Defendants used and/or obtained Ms. Gagnon's credit reports without a permissible purpose.

125. After June 23, 2025, Defendants used and/or obtained Ms. Gagnon's credit reports without authorization.

126. After June 23, 2025, Defendants knowingly and willfully obtained Ms. Gagnon's credit reports under false pretenses.

127. Defendants' actions violated the FCRA.

128. Defendants' actions negligently violated the FCRA.

129. Defendants' action willfully violated the FCRA.

130. Ms. Gagnon has suffered damages from Defendants' actions, including monetary loss, credit damage, lost reputation, lost time, lost credit, lost opportunities, and emotional distress.

131. Pursuant to the FRCA, Ms. Gagnon respectfully requests an award of actual damages or statutory damages (whichever is greater), punitive damages, costs, and reasonable attorney's fees. 15 U.S.C. §§ 1681n and/or 1681o.

## COUNT IV
## BREACH OF CONTRACT
## (AGAINST ALL DEFENDANTS)

132. The preceding allegations are incorporated by reference.

133. Defendants sold Ms. Gagnon the Vehicle pursuant to the MVPC, and reserved a security interest in it pursuant to the RISC.

134. Title to the Vehicle passed to Ms. Gagnon when Defendants knowingly, willfully, and intentionally transferred possession of to Ms. Gagnon on June 26, 2025. G.L. c. 106, § 2-401(2).

135. The transfer of title is further evidenced by Ms. Gagnon's contemporaneous actions in registering and insuring the Vehicle.

136. Defendants have materially breached their contractual obligations with Ms. Gagnon.

137. Ms. Gagnon has suffered damages from Defendants' actions, including monetary loss, credit damage, lost reputation, lost time, lost credit, lost opportunities, and emotional distress.

138. Ms. Gagnon respectfully requests an award of actual damages.


## COUNT IV
## FRAUD OR DECEIT IN THE SALE OF PERSONAL PROPERTY
## G.L. c. 231, § 85J
## (AGAINST ALL DEFENDANTS)

139. The preceding allegations are incorporated by reference.

140. Defendants fraudulently misrepresented to Ms. Gagnon that she was purchasing the Vehicle, and that she had been approved for financing to do so.

141. Defendants deceived Ms. Gagnon into believing that she was purchasing the Vehicle, and that she had been approved for financing to do so.

142. Defendants actually intended to treat the contract as if it were contingent upon third-party assignment or financing approval. If this condition was not met, Defendants intended to demand that Ms. Gagnon return possession and ownership of the Vehicle. If Ms. Gagnon refused this demand, Defendants further intended to allege that Ms. Gagnon stole the Vehicle.

143. Defendants did not disclose these intentions to Ms. Gagnon on or before June 23, 2025.

144. Defendants fraudulently induced Ms. Gagnon to pay a deposit of $1,000.

145. Defendants fraudulently induced Ms. Gagnon to sign the MVPC and RISC.

146. Ms. Gagnon relied upon Defendants' fraud and/or deceit to her detriment.

147. Ms. Gagnon has suffered damages from Defendants' actions, including monetary loss, credit damage, lost reputation, lost time, lost credit, lost opportunities, and emotional distress.

148. Pursuant to G.L. c. 231, § 85J, Ms. Gagnon respectfully requests an award of triple actual damages.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally for the following:

A. Pursuant to the Truth in Lending Act, Ms. Gagnon respectfully requests an award of actual damage, statutory damage, costs, and reasonable attorney's fees;

B. Pursuant to the Equal Credit Opportunity Act, Ms. Gagnon respectfully

requests an award of actual damage, punitive damages of $10,000, costs, and reasonable attorney's fees;

      C.      Pursuant to the Fair Credit Reporting Act, Ms. Gagnon respectfully requests an award of actual damages or statutory damages (whichever is greater), punitive damages, costs, and reasonable attorney's fees;

      D.      Ms. Gagnon respectfully requests an award of actual damages for breach of contract;

      E.      Pursuant to G.L. c. 231, § 85J, Ms. Gagnon respectfully requests an award of triple actual damages; and

      F.      Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Christopher M. Brine*
Christopher M. Brine (BBO 679289)
Of Counsel
Rights Protection Law Group, PLLC
75 State Street, Suite 100
Boston, MA 02109
Phone: (844) 574-4487
Email: c.brine@rightsprotect.com

## REQUEST FOR JURY TRIAL

Please take notice that Plaintiff Tara Gagnon demands trial by jury in this action on all issues so triable. U.S. Const. amend. VII; Fed. R. Civ. P. 38.